IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHARLES CHEJFEC                *
641 W. Lake Street, 5th Floor
Chicago, IL 60661                     *

          Plaintiff,
                             *

      v.

CITIBANK, N.A.               *     Case No.: _____
701 East 60th Street North
Sioux Falls, South Dakota 57104     *    Judge: _____

         Defendant.            *

                                    *

                                    *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## ANSWER AND COUNTERCLAIM

For its answer and counterclaim to the Complaint for Declaratory Judgment ("Complaint") filed by Plaintiff Charles Chejfec ("Plaintiff" or "Mr. Chejfec"), Defendant Citibank, N.A. ("Citibank"), through counsel, hereby states as follows.

## ANSWER

### I.    Nature of the Action

1.     For its response to Paragraph 1 of the Complaint, Citibank admits that Plaintiff is liable for unpaid principal, interest, attorneys' fees, and other costs due under the Note, a copy of which is attached to the Complaint as Exhibit 1. Citibank denies that it is engaged in any wrongful conduct in seeking to collect amounts due under the Note. Further responding, Citibank states that at no time since January of 2017 has Plaintiff tendered any funds to reduce his monetary obligation to Citibank under the Note. Citibank admits that it did not avail itself of

self-help measures to collect funds from Plaintiff's ex-wife, Shannon Chejfec ("Mrs. Chejfec"), in or about August, 2017. Citibank denies the allegations in the final sentence of Paragraph 1.

2. For its response to Paragraph 2 of the Complaint, Citibank denies that Plaintiff has tendered funds to reduce his monetary obligation to Citibank under the Note at any time since January 2017. Citibank admits that Plaintiff is liable for all sums due and owing under the Note. Citibank denies Plaintiff's assertion that he is not liable for certain sums due under the Note. Citibank denies that the amount that it seeks is less than $30,000. Further responding, Citibank states that the amount that it seeks from Plaintiff exceeds the sum of $80,684.67.

3. For its response to Paragraph 3 of the Complaint, Citibank asserts that Plaintiff is responsible for paying all unpaid principal, interest, attorney's fees, and other expenses due under the Note. Any other allegations in the first two sentences of Paragraph 3 are denied. Citibank denies the last two sentences of Paragraph 3 and states that, to resolve this dispute, the Court must determine that the Note represents a binding and enforceable obligation of Plaintiff, and that he is liable to Citibank in an amount in excess of $80,684.67.

## II. Parties

4. Citibank admits the allegations in Paragraph 4 of the Complaint.

5. Citibank admits that it is a national bank with branches in Chicago, including a place of business located at the referenced address.

## III. Jurisdiction and Venue

6. Citibank admits the allegations in Paragraph 6 of the Complaint.

7. For its response to Paragraph 7 of the Complaint, Citibank notes that this action has been removed to federal court, and that venue in the United States District Court for the Northern District of Illinois is appropriate.

## IV.  Facts

8.  Citibank admits the allegations in Paragraph 8 of the Complaint.  Further responding, Citibank states that the Note is an unconditional promise by Mr. Chejfec and Mrs. Chejfec to pay the monetary obligation contained therein to Citibank in accordance with all of its terms.

9.  For its response to Paragraph 9 of the Complaint, Citibank admits that Paragraph 17 of the Note contains the referenced language, though the passage from Paragraph 17 quoted in the Complaint is materially incomplete.  Further responding, Citibank states that in Paragraph 12 of the Note, Mr. Chejfec and Mrs. Chejfec specifically granted to Citibank the right to delay enforcing any of Citibank's rights without losing such rights.

10.  Citibank admits that Paragraph 9 of the Note contains the language set forth in Paragraph 10 of the Complaint.

11.  Citibank lacks knowledge sufficient to respond to the allegations in Paragraph 11 of the Complaint.

12.  Citibank lacks knowledge sufficient to respond to the allegations in Paragraph 12 of the Complaint.

13.  For its response to Paragraph 13 of the Complaint, Citibank admits that all sums due under the Note were payable on or before October 31, 2016, and that Plaintiff failed to pay all such sums by the maturity date.  Citibank further admits that discussions occurred during this time frame between Plaintiff and Mr. Kriegshaber about Plaintiff's failure to make payment in full as required by the plain terms of the Note.

14.  For its response to Paragraph 14 of the Complaint, Citibank admits that Mr. Chejfec and Mr. Kriegshaber had various discussions pertaining to both the divorce and the failure by Mr. Chejfec and Mrs. Chejfec to pay the sums due under the Note.  Further

3

responding, Citibank states that it was willing to extend the maturity date due to the ongoing divorce proceeding, but neither Mr. Kriegshaber nor any other representative of Citibank agreed that Citibank would accept in payment anything less than the full amount due in accordance with the terms of the Note.

15. For its response to Paragraph 15 of the Complaint, Citibank states that Mr. Chejfec and Mr. Kriegshaber agreed to continue speaking. Any other allegations in Paragraph 15 are denied.

16. Citibank admits the allegations in the first sentence of Paragraph 16 of the Complaint. Citibank denies the allegations in the second sentence of Paragraph 16. Citibank admits that Mr. Chejfec advised that the martial home would be listed for sale. Any other allegations in Paragraph 16 are denied.

17. For its response to Paragraph 17 of the Complaint, Citibank admits that Mr. Chejfec and Mrs. Chejfec executed a forbearance letter that extended the maturity date of the Note to April 30, 2017.

18. For its response to Paragraph 18 of the Complaint, Citibank admits that it retained counsel for purposes of this matter. Citibank further admits that, after he had been engaged by Citibank, Mr. Tobin began communicating with Mr. Chejfec. Any other allegations in Paragraph 18 are denied.

19. Citibank admits the allegations of the first sentence of Paragraph 19 of the Complaint. Citibank further admits that various discussions ensued between Mr. Chejfec and Citibank's representatives regarding the financial circumstances of Mr. Chejfec and Mrs. Chejfec. Citibank denies that Mr. Chejfec made any proposal to pay Citibank all sums due and

4

owing, whether inclusive or exclusive of enforcement costs. Mr. Chejfec never tendered any funds to pay all or any portion of the debt that he owed during the referenced time period.

20. Citibank denies the allegations in Paragraph 20 of the Complaint.

21. Citibank lacks knowledge sufficient to respond to the allegations in the first sentence of Paragraph 21 of the Complaint. Citibank admits that Mr. Chejfec advised Citibank that the martial home had been sold. Citibank admits that the Note includes the authorization for Citibank to set off amounts due under the Note against sums held by the obligors in a Citibank deposit account.

22. Citibank denies the allegations in the first sentence of Paragraph 22 of the Complaint. Citibank admits the remaining allegations in Paragraph 22.

23. For its response to Paragraph 23 of the Complaint, Citibank states that the account that is the subject of the allegations in Paragraphs 22 and 23 was titled in the name of Mrs. Chejfec. Accordingly, Citibank denies the allegations in the first sentence of Paragraph 23, because Mr. Chejfec lacked authority to direct Citibank to use the funds in the referenced account to pay off the Note. Further responding, Citibank states that it communicated with Mr. Chejfec and Mrs. Chejfec during this time frame by letter regarding the status of their divorce proceeding. Citibank was advised through these communications that Mr. Chejfec and Mrs. Chejfec expected that their divorce would become final before the end of 2017, and that their respective rights and obligations pertaining to the Note would be addressed in a Marital Settlement Agreement.

24. Citibank denies the allegations in the first three sentences of Paragraph 24 of the Complaint. Further responding, Citibank states that its counsel sent a letter to Mr. Chejfec and Mrs. Chejfec on September 6, 2017, stating that Citibank intended to file suit unless it received

prompt payment of all sums due and owing under the Note. Further discussions occurred after this letter had been sent between Mr. Chejfec and Citibank's counsel. During this time, Citibank was not in direct communication with Mrs. Chejfec. As a result of statements by Mr. Chejfec during these discussions regarding the status of the divorce proceeding, Citibank understood that Mr. Chejfec had filed a motion in the divorce proceeding requesting authorization to use proceeds from the sale of the marital home to retire the Citibank debt. Citibank further understood from Mr. Chejfec that a hearing on this request had been scheduled for mid-October, 2017, and that a trial would occur as to any unresolved issues in the divorce in early December, 2017. Based on these representations by Mr. Chejfec, Citibank's counsel sent a letter to Mr. Chejfec and Mrs. Chejfec on September 25, 2017, stating that Citibank understood both that the parties had acknowledged their debt obligation to Citibank and that they intended to resolve such obligation in the near term. Citibank advised the Chejfecs in this letter that, based on Mr. Chejfec's representations, it did not intend to file a legal action against them prior to the resolution of the divorce proceeding. Citibank attaches a copy of its letter of September 25, 2017 as Exhibit 1.

25.     For its response to the first sentence of Paragraph 25 of the Complaint, Citibank admits that Mr. Chejfec threatened to file a lawsuit, but any other allegations in the first sentence of Paragraph 25 are denied. Citibank admits that Mr. Chejfec made statements similar to those alleged in the second sentence of Paragraph 25. Citibank admits that its position is that the obligors under the Note are responsible for paying all principal, interest, attorney's fees, and other expenses due thereunder. Any other allegations in the last sentence of Paragraph 25 are denied.

26.     Based on public records of the court proceeding in the Chejfecs' divorce action, Citibank admits the allegations in the first two sentences of Paragraph 26 of the Complaint. Citibank denies that Mr. Chejfec ever made clear to Citibank that he intended to pay 65% of the Note as of August 2017.   Further responding, Citibank admits that the Marital Settlement Agreement requires that Mr. Chejfec pay 65% of the all amounts due and owing under the Note.

27.     Citibank denies the allegations in Paragraph 27 of the Complaint.

28.     Citibank admits that on April 9, 2018 the referenced letter was sent to the Chejfecs, and that the letter stated the amount then due was $108,185.03.  Citibank admits that the document attached as Exhibit 2 to the Complaint is a true and correct copy of such letter, and that such letter speaks for itself.  Any other allegations in Paragraph 28 are denied.

29.     The allegations in Paragraph 29 of the Complaint purport to characterize the contents of the letter attached as Exhibit 2 to the Complaint.  Citibank denies the allegations in Paragraph 29 to the extent such allegations mischaracterize the contents of the letter.  Any other allegations in Paragraph 29 are denied.

30.     Citibank denies the allegations in Paragraph 30 of the Complaint.

31.     Citibank denies the allegations in Paragraph 31 of the Complaint.

32.     For its response to Paragraph 32 of the Complaint, Citibank admits that its counsel sent the letter attached as Exhibit 3 to the Complaint on October 16, 2018, and further that the copy attached to the Complaint is true and correct.  Citibank denies the allegations in the second sentence of Paragraph 32.  Citibank admits that the referenced letter included a statement that Mr. Chejfec owed Citibank the sum of $80,684.67, but Citibank denies any other allegations in the third sentence of Paragraph 32.  Citibank admits the allegations in the last two sentences of Paragraph 32.

**Count One**
**(Declaratory Judgment)**

33.     Citibank incorporates by reference its foregoing responses to Paragraphs 1 through 32 of the Complaint.

34.     Paragraph 34 of the Complaint purports to quote a passage from the Illinois code. Citibank denies the allegations of Paragraph 34 to the extent that such quotation materially misstates the relevant statute.

35.     For its response to Paragraph 35 of the Complaint, Citibank states that Mr. Chejfec's payment obligations are set forth in plain and unambiguous terms in both the Note and the marital settlement agreement.   Accordingly, the only "actual controversy" between the parties exists because Mr. Chejfec refuses to pay the sums that are unambiguously due and owing to Citibank.   Citibank denies that Mr. Chejfec has any legal or equitable basis to be excused from any of his payment obligations to Citibank.   Accordingly, Citibank denies that Mr. Chejfec in entitled to the declaration that he seeks.

<u>**AFFIRMATIVE DEFENSES**</u>

**First Affirmative Defense**

The Complaint fails to state a cause of action upon which relief may be granted.

**Second Affirmative Defense**

Plaintiff has not incurred an injury in fact, and thus Plaintiff does not have standing under Article III of the United States Constitution to bring the instant claims against Citibank.

**Third Affirmative Defense**

Plaintiff's claims are barred in whole or in part by the doctrines of waiver and/or estoppel.

WHEREFORE, Citibank prays that the declaratory judgment sought by Plaintiff Charles Chejfec be DENIED, and that the Court award Citibank its costs and attorneys' fees in accordance with the Note, together with such other relief as the Court deems just and proper.

## COUNTERCLAIM

For its counterclaim against Plaintiff, Citibank alleges and states as follows:

### Introduction

1.      This counterclaim seeks judgment against Plaintiff/Counterclaim Defendant Charles Chejfec for sums that he owes Citibank pursuant to the Note.  Mr. Chejfec agreed to pay Citibank all sums due and owing under the Note when he signed it, when he signed a forbearance letter, and also as part of a settlement agreement in his divorce proceeding, in which he agreed to pay 65% of the amount due to Citibank, and his ex-wife agreed to pay 35%.  Mrs. Chejfec has honored her obligation to Citibank in the percentage amount approved by the state court in the divorce proceeding, but Mr. Chejfec has steadfastly refused to pay the amount that he unambiguously owes.  Citibank therefore asserts this counterclaim and requests judgment for all principal, interest, and enforcement expense owed by Mr. Chejfec.

### Factual Allegations

2.      On October 30, 2013, Citibank extended a revolving credit line to Mr. Chejfec and Mrs. Chejfec in the original principal amount of $120,000.00 ("Loan").  In exchange for these loan proceeds, Mr. Chejfec and Mrs. Chejfec executed a Revolving Credit/Time Note (the "Note").  A true and correct copy of the Note is attached as Exhibit 2.

3.      The Note provides that Mr. Chejfec and Mrs. Chejfec would be in default upon failure to pay any amounts as and when due, or upon failure to perform any of their other obligations to Citibank as specified in the Note.  *See* Exhibit 2.

4. Pursuant to the terms of the Note, Mr. Chejfec and Mrs. Chejfec agreed "to pay, on demand, all costs and expenses, if any, in connection with the collection or enforcement of the Obligations . . . including without limitation reasonable attorneys' fees[.]" *See* Ex. 2 at ¶ 14.

5. The Loan matured on October 31, 2016. On January 27, 2017, Mr. Chejfec and Mrs. Chejfec executed a letter agreement with Citibank (the "Forbearance Letter"), pursuant to which the maturity date of the Note was extended to April 30, 2017. A true and correct copy of the Forbearance Letter is attached as Exhibit 3.

6. Mr. Chejfec and Mrs. Chejfec promised and agreed to repay the Loan in full by the April 30, 2017 maturity date, as required by the Note and the Forbearance Letter. Mr. Chejfec and Mrs. Chejfec failed to pay the Loan in full by the maturity date.

7. Mr. Chejfec and Mrs. Chejfec's failure to repay the Loan by the April 30, 2017 maturity date is an event of default under the Note.

8. Mr. Chejfec and Mrs. Chejfec are divorced pursuant to a Judgment for Dissolution of Marriage entered on December 7, 2017, in the matter of Shannon Chejfec and Charles Chejfec in the Circuit Court for the Eighteenth Judicial Circuit, Du Page County, Wheaton, Illinois, Case No. 2015 D1579.

9. As part of their divorce, Mr. Chejfec and Mrs. Chejfec entered into a Marital Settlement Agreement. A copy of the Marital Settlement Agreement is attached as Exhibit 4. The Marital Settlement Agreement allocated responsibility for repayment of the Note to Citibank. *See* Exhibit 4 at 15, ¶ 19. Pursuant to the Marital Settlement Agreement, Mr. Chejfec was responsible to pay 65% of the amount due under the Note, and Mrs. Chejfec was responsible to pay 35% of the amount due under the Note. *See id.*

10. During communications after the divorce became final, Mr. Chejfec advised that he and his ex-wife had agreed to split the obligation to Citibank, and to pay the amounts that they owed within 30 days. Citibank's counsel sent a letter to Mr. Chejfec and Mrs. Chejfec on December 20, 2017, which provided a pay-off amount good for January 8, 2018, *i.e.*, 30 days after the divorce became final. A copy of the December 20 letter is attached as Exhibit 5.

11. Despite efforts by Citibank's representatives, Mr. Chejfec did not respond to the December 20 letter or to other inquiries. During January, however, Citibank began direct communications with Mrs. Chejfec, who supplied a copy of the Marital Settlement Agreement on January 23, 2018.

12. Further attempts at communication with Mr. Chejfec were not successful. Accordingly, on April 9, 2018, counsel for Citibank sent a letter to Mr. Chejfec and Mrs. Chejfec to propose terms for the full and final payment of the Loan. A true and correct copy of the April 9, 2018 letter is attached as Exhibit 6.

13. As set forth in the letter dated April 9, 2018, the amount owed on the Note, at the time, was $108,185.03, including enforcement costs. Citibank offered to accept the sum of $102,552.37 in full and final resolution of the indebtedness, so long as payment was received by April 30, 2018. By application of the allocation of responsibility set forth in the Marital Settlement Agreement, Citibank offered to accept $66,639.54 in payment from Mr. Chejfec, and $35,882.82 in payment from Mrs. Chejfec, in full and final resolution of the indebtedness owed.

14. Mrs. Chejfec responded to the April 9 letter by email on April 10, stating "I am agreeable to the term." Mr. Chejfec, however, did not respond.

15. Neither Mr. Chejfec nor Mrs. Chejfec remitted payment to Citibank on or before April 30, 2018. However, through discussions with Citibank following her email on April 10,

11

Mrs. Chejfec acknowledged her payment obligation to Citibank and agreed to pay her portion of the debt, in accordance with the allocation of responsibility set forth in the Marital Settlement Agreement.

16. As a result of ensuing discussions, Mrs. Chejfec remitted payment in the amount of $36,348.61 by wire transfer to Citibank on June 6, 2018. Citibank accepted this sum in satisfaction of Mrs. Chejfec's payment obligation to Citibank under the Note. Citibank applied all of the payment of $36,348.61 to reduce the principal amount owed on the Note.

17. Mr. Chejfec is responsible to pay Citibank the remaining amount due under the Note. Despite demand, Mr. Chejfec has failed to repay Citibank the remaining amount due and owing. This failure is a breach of Mr. Chejfec's payment obligation under the terms of the Note.

18. As of October 11, 2018, Mr. Chejfec's total obligation to Citibank under the Note is $80,684.67.

19. Interest on the outstanding principal balance of the debt continues to accrue at the default rate of interest as set forth in the Note, at the *per diem* rate of $13.96. Enforcement expense also continues to accrue.

### Count One
### Breach of Contract (Promissory Note)

20. Citibank incorporates the allegations in the foregoing paragraphs 1-19 as if fully set forth herein.

21. On or about October 30, 2013, Citibank and Mr. Chejfec entered into a loan contract, the payment obligation of which is evidenced by the Note. A copy of the Note, marked Exhibit 2, is attached hereto and incorporated herein by reference.

22. Citibank performed all the conditions, covenants, promises and agreements required of it by having disbursed to Mr. Chejfec and Mrs. Chejfec the sum of $120,000.00.

23.     Mr. Chejfec has failed, and continues to fail, to perform his part of the contract or to tender such performance as required by the Note.  In particular, Mr. Chejfec has not met his obligation to pay the principal amount, all interest owing on the principal amount, and enforcement costs, despite the obligation of Mr. Chejfec to pay all such sums under the terms of the Note.

24.     Citibank demanded repayment of the full amount due under the Note by letter to Mr. Chejfec dated October 16, 2018.  Mr. Chejfec has failed to repay the full amount due.

25.     The Note provides that in the event legal action is taken to enforce collection, Mr. Chejfec promises to pay "all costs and expenses . . . including without limitation reasonable attorneys' fees [.]"  *See* Ex. 1 at ¶ 14.

26.     Citibank has employed counsel to enforce the Note, which has necessitated the filing of this answer and counterclaim to address Mr. Chejfec's failure to repay the full amount due under the Note.

27.     As a proximate result of Mr. Chejfec's default under the Note, Citibank has incurred monetary losses in an amount exceeding $80,684.67.

WHEREFORE, Citibank prays for judgment against Charles Chejfec in an amount to be proven at trial not less than $80,684.67, plus pre- and post-judgment interest as allowed by law, costs and disbursements in accordance with the Note, attorneys' fees as permitted by the Note, and such other relief as the Court deems just and proper.

13

Respectfully submitted,

November 16, 2018

BY: /S/ TIMOTHY BINETTI
Timothy L. Binetti (ARDC No. 6282534)
DINSMORE & SHOHL, LLP
227 W. Monroe St., Suite 3850
Chicago, IL 60606
(312) 428-2723
timothy.binetti@dinsmore.com

OF COUNSEL:
Daniel J. Tobin
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Washington, DC  20006
tobindj@ballardspahr.com

*Attorneys for Citibank, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of November, 2018, I have caused a true and correct copy of the forgoing Answer and Counterclaim, with all attachments, to be served by first-class mail, postage prepaid to:

Charles Chejfec
Actuate Law LLC
641 W. Lake Street, 5th Floor
Chicago, IL 60661

/s/ *Timothy L. Binetti*
Timothy L. Binetti

14